# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      PLAINTIFF ESTABLISHED A PRIMA FACIE TITLE IX CLAIM. . . . . . . . . . . . . . . . 5

        1.      PLAINTIFF DEMONSTRATED THAT SHE WAS SUBJECTED TO
                SEXUAL HARASSMENT BY A TEACHER EMPLOYED BY THE
                DEFENDANT SCHOOL DISTRICT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                A.      PLAINTIFF'S COMPLAINT ABOUT THE SCHOOL PICTURE. . . . . . . 7

                B.      PLAINTIFF COMPLAINED THAT DEFENDANT EBERSOLD
                        GRABBED AN OBJECT OUT OF HER FRONT PANTS
                        POCKET AND TOOK INORDINATE ISSUES WITH HER
                        CLOTHING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                C.      DEFENDANT EBERSOLD STROKED PLAINTIFF'S HAIR,
                        WHICH IS VERY DIFFERENT THAN A PAT ON THE
                        HEAD FOR POSITIVE REINFORCEMENT.. . . . . . . . . . . . . . . . . . . . . 10

                D.      PLAINTIFF COMPLAINED THAT DEFENDANT EBERSOLD
                        TOLD HER SHE WAS PRETTY, THAT SHE HAD BEAUTIFUL
                        BLONDE HAIR AND USED AN EXAMPLE OF HE AND SHE
                        HAVING A CHILD TOGETHER, IMPLYING SEXUAL
                        RELATIONS BETWEEN THEM.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.      PLAINTIFF SHOWED THAT THE DEFENDANTS HAD SPECIFIC
                KNOWLEDGE OF HER COMPLAINTS OF INAPPROPRIATE
                COMMENTS AND CONDUCT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        3.      THE DISTRICT DISPLAYED DELIBERATE INDIFFERENCE TO
                PLAINTIFF'S ALLEGATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        4.      DEFENDANTS ATTEMPT TO ADD AN ELEMENT WHICH IS NOT
                REQUIRED IN TEACHER-STUDENT SEXUAL HARASSMENT CASES. . . 20

II.     THE DEFENDANT SCHOOL DISTRICT VIOLATED PLAINTIFF'S
        RIGHTS UNDER 42 U.S.C. §1983.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        1.      PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE VIOLATED. . . . . . . . . 21

i

2.      THE ALLEGED DEPRIVATION OCCURRED UNDER COLOR
        OF STATE LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.    PLAINTIFF HAS SHOWN SUFFICIENT EVIDENCE TO DEFEAT
        DEFENDANT EBERSOLD'S MOTION FOR SUMMARY JUDGMENT
        ON HER CLAIMS OF INTENTIONAL AND NEGLIGENT  INFLICTION OF
        EMOTIONAL DISTRESS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

        1.      PLAINTIFF CAN ESTABLISH A CLAIM FOR INTENTIONAL
                INFLICTION OF EMOTIONAL DISTRESS. . . . . . . . . . . . . . . . . . . . . . . . 27

        2.      PLAINTIFF CAN ESTABLISH A CLAIM FOR NEGLIGENT
                INFLICTION OF EMOTIONAL DISTRESS. . . . . . . . . . . . . . . . . . . . . . . . 31

IV.     PLAINTIFF CAN ESTABLISH HER CLAIM OF NEGLIGENT SUPERVISION
        AGAINST BOTH DEFENDANTS STROBEL AND RIDGEWAY,
        WHO ARE NOT IMMUNE FROM LIABILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        1.      PLAINTIFF'S CLAIM FOR NEGLIGENT SUPERVISION IS NOT
                BARRED BY THE DOCTRINE OF OFFICIAL IMMUNITY. . . . . . . . . . . . . 33

        2.      PLAINTIFF ESTABLISH A PRIMA FACIE CASE OF NEGLIGENT
                SUPERVISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

EXHIBIT LIST. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

ii

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505,
91 L.Ed.2d 202 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bolon v. Rolla Public Schools,* 917 F.Supp. 1423, 1428 (E.D.Mo. 1996). . . . . . . . . . . . 6, 12, 24

*Bosley v. Kearney School District,* 904 F.Supp. 1006, 1028 (W.D. Mo.1995). . . . . . . . . . . . 8, 11

*Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 653 (1999). . . . . . . . . . 5, 6, 13, 19,20

*Doe v. School Admin. Dist. No. 19,* 66 F.Supp.2d 57, 64 (D.Me. 1999). . . . . . . . . . . . . . . . . . . 15

*Franklin v. Gwinnett County Public Schools,* 503 U.S. 60 (1992). . . . . . . . . . . . . . . . . . . . . . . 20

*G.E.T. by T.T. v. Barron,* 4. S.W.2d 622, 625 (Mo.App.E.D. 1999). . . . . . . . . . . . . . . . . . . . . . . 36

*Gebser v. Lago Vista Indep. School District,* 524 U.S. 274, 285 (1998). . . . . . . . . . . . . . 5, 15, 20

*Gordon v. Ottumwa Comm. Sch.Dist.,* 115 F.Supp.2d 1077,
1082 (S.D. Iowa 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 20

*Hartnagel v. Norman,* 953 F.2d 394, 395. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jackson v. Roberts,* 774 S.W.2d 860, 861 (Mo.App. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Johnson v. Minnesota Historical Society,* 931 F.2d 1239, 1244 (8th Cir.1991). . . . . . . . . . . . . . 4

*K.G. v. R.T.R.,* 918 S.W.2d 795, 800 (Mo. banc 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Kanagawa v. State by and Through Freeman,* 685 S.W.2d 831,
835 (Mo.banc 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827 (8th Cir.2000). . . . . . . . . . . . . . . . . . . . 5

*Kinman v. Omaha Public School District,* 94 F.3d 463, 467-68 (8th Cir.1996). . . . . . . . . . . 7, 13

*Lehmen v. Wansing,* 624 S.W. 2d 1 (Mo.1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587,
106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). . . . . . . . . . . . . . . 4, 7

iii

*Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Montgomery v. Independent School Dist. No. 709,* 109 F.Supp.2d 1081,
                1094 (D.Minn.2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Naylor v. Georgia-Pacific Corp.,* 875 F.Supp. 564, 573 (N.D.Iowa 1995). . . . . . . . . . . . . . . . 4

*O.L. v. R.L.,* 62 S.W.3d 469, 474 (Mo.App.W.D. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Ostrander v. Duggan,* 341 F.3d 745, 750 (8th Cir.2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*P.H. v. School District of Kansas City, Missouri,* 265 F.3d 653,
                662 (8th Cir.2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22, 24

*Rustici v. Weidemeyer,* 673 S.W.2d 762, 769 (Mo. banc 1984). . . . . . . . . . . . . . . . . . . . . . . . 34

*Shrum ex rel. Kelly v. Kluck,* 249 F.3d 773 (8th Cir.2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Spearman v. University City Public School Dist.,* 617 S.W.2d
                68 (Mo. 1981).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33

*Van Deelen v. City of Kansas City, Missouri,* 411 F.Supp.2d 1105,
                1119 (W.D. Mo. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Wabun-Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990).. . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wooten v. Pleasant Hope R-VI School Dist.,* 139 F.Supp.2d 835,
                843 (W.D.Mo.2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Case 2:05-cv-04282-WAK   Document 48   Filed 10/31/06   Page 4 of 42

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| L.D., by her next friends | ) | |
| TRAVIS and GENEVA DIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 05-4282-CV-C-WAK |
| | ) | |
| OSAGE R-1 SCHOOL DISTRICT, | ) | |
| JOE RIDGEWAY, BRAD STROBEL and | ) | |
| SCOTT EBERSOLD, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, L.D., by her next friends, Travis and Geneva Dial, by and through her undersigned counsel, and for her Suggestions in Opposition to Defendants' Motion for Summary Judgment and states as follows:

## INTRODUCTION

Plaintiff L.D. ("Plaintiff") was a student enrolled at Osage R-1 School District ("Defendant School District") during the 2004-05 academic year. During that year, Plaintiff made complaints, through her mother, regarding one of her teachers, Defendant Scott Ebersold ("Defendant Ebersold"). Plaintiff filed this lawsuit against Defendant Ebersold, Defendant School District and two other individual defendants, the principal of the high school, Defendant Brad Strobel ("Defendant Strobel") and the superintendent of the Defendant School District for that academic year, Defendant Joe Ridgeway ("Defendant Ridgeway"). The lawsuit has five separate counts, including violations of Title IX of the Education Amendments of 1972 ("Title

1

IX"), 42 U.S.C. §1983, negligent supervision, intentional infliction of emotional distress and negligent infliction of emotional distress.

During the 2004-05 academic year, Defendant Ebersold taught two classes in which Plaintiff was one of the students, science and physical education. Plaintiff alleges that during that school year, Defendant Ebersold grabbed a tube of lip gloss out of the front pocket of her jeans, rubbed her back, stroked her hair, called her "pretty", told her she had "beautiful blonde hair", kept her school picture when he kept no other student's picture and made reference to he and she having a baby together in class, subjecting her to ridicule by her classmates. At the time, Plaintiff was in seventh grade and was only twelve years old at all times relevant to this lawsuit.

After Defendant Ebersold began touching Plaintiff in ways she felt were inappropriate, she complained to her mother, Geneva Dial ("Plaintiff's Mother"). Plaintiff's Mother first went to Defendant Ebersold to tell him to stop his comments and conduct towards her daughter. When that did not stop Defendant Ebersold, Plaintiff's Mother complained to Defendant Strobel. Plaintiff's Mother first spoke to Defendant Strobel in October, 2004, and again in late December, 2004 or early January, 2005. She went back to complain to Defendant Strobel in March, 2005. After those complaints went unheeded, Plaintiff's Mother complained to Defendant Ridgeway in April and May, 2005. While Defendants claim that Defendant Strobel conducted an investigation of Plaintiff's allegations of sexual harassment, the "investigation" was neither thorough nor calculated to actually elicit information relevant to Plaintiff's complaint. Defendant Strobel admitted in his deposition that he did not ask any of the students about specific allegations except the incident when Defendant Strobel grabbed a tube of lip gloss from Plaintiff's front pant pocket. He failed to ask the students about the stroking of Plaintiff's hair,

2

the comments about her appearance or any other specific incident. Defendants effectively buried their collective heads in the sand in an attempt to avoid finding out what actually happened to Plaintiff.

Consistent with that position, Defendant Ridgeway did not advise Plaintiff's parents that he placed their complaints on the agenda for the school board on two separate occasions. As a result, Plaintiff's parents did not appear before the school board for those two meetings because they received no notice from Defendants. Furthermore, Defendant Ridgeway sent a letter advising Plaintiff's parents that, in order to place their complaints about Defendant Ebersold on the agenda, they were required to complete and submit a form by 1:00 p.m. on May 12th, 2005. Plaintiff's parents did not receive this letter and form until 4:00 p.m. on May 12th, 2005. Therefore, Plaintiff's parents were not given an opportunity to present their complaints to the school board.

Discovery in this lawsuit has shown that Defendants failed to adequately provide protection to Plaintiff. Defendants cannot demonstrate that they are entitled to judgment as a matter of law on any of the counts and, accordingly, the Motion for Summary Judgment should be denied.

## STANDARD OF REVIEW

The Eighth Circuit Court of Appeals has stated in the past "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." ***Wabun-Inini v. Sessions,*** 900 F.2d 1234, 1238 (8th Cir.1990). A court considering a motion for summary judgment must view all of the facts in the light most favorable to the nonmoving party, affording that party the benefit of all reasonable inferences that can be drawn

3

from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* *475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).*

The moving parties, in the case the defendants jointly, bear "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman,* *953 F.2d 394, 395.*

If the defendants carry their burden under Rule 56(c) of the Federal Rules of Civil Procedure, then the plaintiff must present sufficient evidence to demonstrate that there are material facts upon which a genuine issue exists and this showing must be more than a mere suspicion. *Metge v. Baehler,* *762 F.2d 621, 625 (8th Cir. 1985).*

The Eighth Circuit has cautioned that "summary judgment should seldom be used in employment discrimination cases." *Crawford v. Runyon,* *37 F.3d 1338, 1341 (8th Cir.1994)* and *Johnson v. Minnesota Historical Society,* *931 F.2d 1239, 1244 (8th Cir.1991).* The granting of a motion for summary judgment is appropriate only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Crawford,* *37 F.3d at 1341.* "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the non-movant." *Naylor v. Georgia-Pacific Corp.,* *875 F.Supp. 564, 573 (N.D.Iowa 1995)(citing Crawford,* *37 F.3d at 1341* and *Johnson,* *931 F.2d at 1244).*

Upon reviewing a motion for summary judgment, the Court does not weigh the credibility of the evidence, but instead should focus its review on whether a genuine issue of material fact exists. *Van Deelen v. City of Kansas City, Missouri,* *411 F.Supp.2d 1105, 1119 (W.D. Mo. 2006).* "An issue of material fact is 'genuine' if 'the evidence is sufficient to allow a reasonable

4

jury to return a verdict for the non-moving party.'" *Van Deelen, 411 F.Supp.2d at 1119, quoting from Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).* If, however, the evidence supports two conflicting conclusions, then there is a genuine issue of material fact and the motion for summary judgment should be denied. *Van Deelen, 411 F.Supp.2d at 1119, citing Kells v. Sinclair Buick–GMC Truck, Inc., 210 F.3d 827 (8th Cir.2000).*

From the evidence submitted by the parties, Defendants are not entitled to summary judgment on any of the counts in Plaintiff's Complaint.

## I.    PLAINTIFF ESTABLISHED A PRIMA FACIE TITLE IX CLAIM

In Count I of her Complaint, Plaintiff alleges that the Defendant School District violated her rights under Title IX by failing and/or refusing to take action in response to her complaints of sexual harassment by one of her teachers.  In their Memorandum of Law in support of the motion for summary judgment, Defendants misstate the required elements for Plaintiff to establish a *prima facie* case of a Title IX claim.  There are different elements between those cases involving allegations of teacher-student sexual harassment and student-student sexual harassment. *Davis v. Monroe County Bd. of Education, 526 U.S. 629, 653 (1999).*    According to the United States Supreme Court, when a plaintiff complains of teacher-student sexual harassment, the only elements the plaintiff must establish are that 1) the student was sexually harassed by a teacher, 2) the school district had actual knowledge of the allegations of harassment and 3) the school district was deliberately indifferent to the student's complaints of harassment. *Gebser v. Lago Vista Indep. School District, 524 U.S. 274, 285 (1998).*   More recently, the Eighth Circuit Court of Appeals stated the required elements of a Title IX sexual harassment claim are that the school

5

district was "1) deliberately indifferent 2) to known acts of discrimination 3) which occur under its control." ***Ostrander v. Duggan,*** *341 F.3d 745, 750 (8ᵗʰ Cir.2003).* Because Plaintiff has produced sufficient evidence to establish each of these elements, or at least a genuine issue of material fact on those elements, the motion for summary judgment as to Count I should be denied.

1.  **Plaintiff demonstrated that she was subjected to sexual harassment by a teacher employed by the Defendant School District.**

While Defendants would urge this Court to adopt a standard which absolutely mirrors Title VII sexual harassment cases, the United States Supreme Court has held otherwise. "Whether gender-oriented conduct rises to the level of actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectations, and relationships.'" ***Davis,*** *526 U.S. at 651.* The Court further stated that the review includes consideration of the ages of the harasser and the victim and that when the relationship between the harasser and the victim is that of teacher and student, that relationship will necessarily affect the extent to which the misconduct can be found to have violated Title IX's guarantee of equal access to educational benefits and to affect the program and/or activity. ***Davis,*** *526 U.S. at* 651-53. Courts have recognized that school districts owe a high duty of care to protect students from sexual harassment by teachers. *See,* ***Bolon v. Rolla Public Schools,*** *917 F.Supp. 1423, 1428 (E.D.Mo. 1996).* The fact that students are required to attend school until a certain age places upon the school district a high duty of care to ensure that the students are protected. ***Id.*** Unlike the adult who can voluntarily quit employment to seek employment elsewhere, the student has few, if any other, choices but to attend the public school located in her community.

6

The cases cited by Defendants in support of their argument that Plaintiff cannot establish that she was subjected to sexual harassment all involve adult victims. Furthermore, two of the cases are from the State of Kentucky and are not controlling. The Eighth Circuit enunciated the elements of a *prima facie* case of hostile environment harassment in the educational context as follows: plaintiff must show "1) that she belongs to a protected group; 2) that she was subject to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of her education and create an abusive educational environment; and 5) that some basis for institutional liability has been established." ***Kinman v. Omaha Public School District,*** *94 F.3d 463, 467-68 (8th Cir.1996).* As Plaintiff can show sufficient evidence on each element, she has established a *prima facie* case.

There is no question that Plaintiff is a member of a protected group in that she is female. Plaintiff alleges that she was subjected to various forms of sexual harassment by Defendant Ebersold in that he rubbed her back, stroked her hair on several occasions, grabbed an object out of her front pants pocket, touched her arms on several occasions, told her she was pretty and that she had beautiful blonde hair, used her in an example of having a child with him, and kept her school picture even though he did not keep any other student's picture. The parties may differ on how to characterize the conduct of Defendant Ebersold, but on summary judgment, the facts are viewed in a light most favorable to the non-moving party. ***Matsushita,*** *475 U.S. at 587.*

a.      **Plaintiff's complaint about the school picture**

Plaintiff testified that she gave a copy of her school picture to each of her teachers, including Defendant Ebersold, in October, 2004. Plaintiff's Exhibit D, L.D. Depo. 50:20-51:7. Plaintiff alleges, and Defendant Ridgeway confirmed, that Plaintiff's school picture was found in

Defendant Ebersold's desk drawer. Plaintiff's Exhibit D, L.D. Depo. 64:21-65:6; Plaintiff's Exhibit A, Ridgeway Depo. 15:15-19:5. According to Defendant Ridgeway, Plaintiff's school picture was the only student's picture found in Defendant Ebersold's desk drawer and, despite statements from Defendant Ebersold that other students gave him their picture, the only student's picture known to be kept by Defendant Ebersold was Plaintiff's. Plaintiff's Exhibit A, Ridgeway Depo. 15:15-19:5. Defendants' counsel appears to not understand the significance of this fact. If Defendant Ebersold received school pictures from many students, as he claimed, if the only picture he preserved was Plaintiff's, the logical implication is that he had some unique fascination with Plaintiff. Plaintiff testified that Defendant Ebersold's combined conduct "creeped me out and I thought he liked me." Plaintiff's Exhibit D, L.D. Depo. 41:16. This Court cannot ignore the fact that, during the 2004-05 academic year, Plaintiff was a twelve year old child. The fact that a teacher would retain only one particular student's school picture and that student was one whom he'd stroked her hair and used an example of the two of them having a child together, points towards a potential pedophile and should not have been ignored by the school officials. None of Defendant Ebersold's conduct should be viewed in isolation from the other conduct. In fact, when viewing a hostile environment sexual harassment case, the Court should view all of the circumstances together to determine whether there is a pattern of behavior.

***Bosley v. Kearney School District,*** *904 F.Supp. 1006, 1028 (W.D. Mo.1995).*

> **b.** **Plaintiff complained that Defendant Ebersold grabbed an object out of her front pants pocket and took inordinate issues with her clothing**

Defendants mischaracterize the incident in which Defendant Ebersold grabbed an object out of Plaintiff's front jeans pocket. Defendants state that the object was three-fourths exposed,

8

but the video deposition of Plaintiff clearly shows that she put the object far down into her pocket so that only a minimal portion was exposed. She further testified that Defendant Ebersold's hand brushed up against her when he did so. Plaintiff's Exhibit D, L.D. Depo. 10:1-9. Plaintiff further testified that she was sitting down at the time Defendant Ebersold grabbed the object. Plaintiff's Exhibit D, L.D. Depo. 11:4. Plaintiff's description of this incident necessarily places Defendant Ebersold's hand close to her waist and/or lower front abdominal area in order to grab the object. Given the location of the object, Plaintiff contends that Defendant Ebersold should have asked Plaintiff to hand the object to him, rather than reaching down and grabbing the object out of the pocket. Defendant Ebersold's unreasonable conduct in this regard created a risk of touching Plaintiff in an area that is inherently sexual in nature.

As for the clothing issue, Plaintiff testified that Defendant Ebersold told her to put on a coat because her shirt exposed the lower part of her back when she was sitting down and bent over. Plaintiff's Exhibit D, L.D. Depo. 63:17-64:16. Plaintiff's shirt did not violate school policies because it did not expose any part of her skin inappropriately. Plaintiff's Exhibit F. Defendant Ebersold testified that the shirt had spaghetti straps and showed her undergarments and that was why he told her to wear her coat. Plaintiff's Exhibit B, Ebersold Depo. 19:2-5. The photograph plainly shows that the garment has long sleeves and does not expose Plaintiff's body and/or undergarments. Plaintiff's Exhibit F. Defendant Ebersold apparently was paying closer attention to Plaintiff's appearance than the other students.

9

c.   **Defendant Ebersold stroked Plaintiff's hair, which is very different than a pat on the head for positive reinforcement.**

Again, Defendants mischaracterized the incident which occurred at the float building. Plaintiff testified that Defendant Ebersold rubbed her back, not patted her back. Plaintiff's Exhibit D, L.D. Depo. 6:14-19. If that were the only incident of touching, perhaps Defendants might be correct that this was not sexual harassment. Plaintiff testified to other touchings by Defendant Ebersold, even after her mother complained to both Defendants Ebersold and Strobel.

Plaintiff testified that Defendant Ebersold stroked her hair on several occasions. Plaintiff's Exhibit D, L.D. Depo. 24:16-26:8. While the written transcript may not be clear, the video of Plaintiff's deposition clearly shows that when she indicated the manner in which Defendant Ebersold rubbed her head, she showed the actions of stroking her hair. Plaintiff's Exhibit D, L.D. Depo. 24:21-25. At the very least, Defendant Ebersold should have known that his stroking of Plaintiff's hair was not considered to be positive reinforcement by her in April, 2005, as Plaintiff's Mother told him in October, 2004 to refrain from touching her daughter as it made her uncomfortable. Plaintiff's Exhibit G, Geneva Dial Depo. 11:17-13:1. In fact, Plaintiff's Mother testified that Defendant Ebersold acknowledged at that time that he knew Plaintiff was uncomfortable with the way he was touching her and by what he was saying to her. Plaintiff's Exhibit G, Geneva Dial Depo. 12:21-13:1. Thus, a genuine issue of material fact exists as to whether the touchings were positive reinforcement, as Defendants claim, or sexual harassment, as Plaintiff claims.

The stroking of Plaintiff's hair was based upon her gender in that Plaintiff testified that she never saw Defendant Ebersold touch any other student in that manner. Plaintiff's Exhibit D,

10

L.D. Depo. 25:11-20. While a pat on the head might be considered to be positive reinforcement, the stroking of the hair of a member of the opposite sex connotes something entirely different, as was explained to Defendant Ebersold by Plaintiff's Mother. Again, the totality of the circumstances, including the age of the victim and the harasser, must be considered by the Court when reviewing the evidence in this case. *Bosley, 904 F.Supp. at 1028.*

        d. **Plaintiff complained that Defendant Ebersold told her she was pretty, that she had beautiful blonde hair and used an example of he and she having a child together, implying sexual relations between them.**

The problem with Defendant's argument in this case is that they are asking this Court to view each incident separately, as if the other incidents never occurred. Plaintiff did not experience the incidents in that manner and the Court should not view them in that manner either. As previously pointed out, when reviewing the evidence in a case to determine whether there was a hostile environment created, within the context of a claim of sexual harassment, the Court must consider all of the evidence together, not in isolation. *Bosley, 904 F.Supp. at 1028.* In this case, Plaintiff experienced the touchings at the same time Defendant Ebersold was telling her she was pretty and that she had beautiful blonde hair. While Defendants state in their memorandum that Plaintiff testified that she never thought Defendant Ebersold's comments indicated that he had a sexual interest in her, that is absolutely false. Plaintiff testified in her deposition as follows:

Q:     Any my question is this. Do you think that when Mr. Ebersold said that, did you believe that he was expressing a sexual interest in you?

A.     I don't – yes.

11

Q.     Pardon?

A.     Yes.

Plaintiff's Exhibit D, L.D. Depo. 40:14-19.  Plaintiff later stated that she told her mother that his

comments creeped her out and she thought he liked her.  Plaintiff's Exhibit D, L.D. Depo. 41:15-

16.  To suggest to this Court that Plaintiff never testified that she thought Defendant Ebersold's

conduct indicated he was sexually interested in her is a blatant mischaracterization and an

attempt to mislead this Court.

Plaintiff also complained that Defendant Ebersold made a comment in class, in response

to a question posed by her, that she was to assume, in answer to her question, that he and she had

a child together.  Plaintiff's Exhibit D, L.D. Depo. 41:22-42:20.  It would have been possible for

Defendant Ebersold to answer the question without suggesting to Plaintiff that she assume he and

she had a child together.  Because Defendant Ebersold is a male and Plaintiff is a female, he was

necessarily implying sexual contact between them when he suggested that she assume they'd had

a child together.  Thus, the comment is clearly based upon Plaintiff's gender.  Plaintiff further

testified that Defendant Ebersold never used any other student in such an example and that other

students in the class teased her about it, even to the point of suggesting that Defendant Ebersold

had a "crush" on her.  Plaintiff's Exhibit D, L.D. Depo. 59:22-60:2.

While Defendants contend that these incidents are not sufficiently severe or pervasive as

to create a hostile environment, they are asking the Court to consider the reasonable person

standard.  This contention ignores the fact that Plaintiff was a twelve year old girl at the time, not

an adult.  Courts have recognized in the past that schools have a high duty of care to protect

children.  ***Bolon,*** *917 F.Supp. at 1428.*  The United States Supreme Court stated that there is a

difference when considering sexual harassment of a student by a teacher as opposed to harassment by one of her peers. *Davis, 526 U.S. at 653.* The reason why the Courts have so held should be obvious -- children are not as sophisticated or mature as adults and should not, therefore, be held to the same standards as adults.

The totality of the evidence in this case demonstrates that Plaintiff established a *prima facie* case of hostile environment sexual harassment and, on that basis, the motion for summary judgment should be denied.

 2. <u>**Plaintiff showed that the Defendants had specific knowledge of her complaints of inappropriate comments and conduct.**</u>

Plaintiff does not dispute the law as stated by Defendants in their motion for summary judgment that "Title IX liability attaches only where the school district has actual knowledge and remains deliberately indifferent to acts of teacher-student harassment." ***P.H. v. School District of Kansas City, Missouri,*** *265 F.3d 653, 662 (8th Cir.2001).* In order to establish that actual notice occurred, Plaintiff must show that a school official with the authority to address the alleged conduct and to take corrective action had actual notice of the harassing behavior. ***Kinman v. Omaha Public School District,*** *171 F.3d 607, 610 (8th Cir.1999).* While Defendants then state that actual notice requires more than a simple report of inappropriate conduct, the Defendants omitted the remainder of the court's ruling in ***Gordon v. Ottumwa Comm. Sch.Dist.,*** *115 F.Supp.2d 1077, 1082 (S.D. Iowa 2000).* The court went on to state that "the . . . standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student." ***Gordon,*** *115 F.Supp.2d at 1082.*

13

To assist in delineating where the standard lies, the court in that case looked at several different prior reports made against a school employee to see if any of those reports gave actual notice to the school district that the employee presented a risk of sexual abuse of the student who ultimately complained. One prior report was that the school employee slapped a child. The court found that this report did not provide actual notice to the school district that the school employee would likely sexually harass another student. Another report, however, was that the school employee hugged a female student, kissed her on the lips and patted her rear end. The court found that this report provided actual notice to the school district that the school employee might sexually abuse another female student.

In the instant case, the prior reports provided by Plaintiff's Mother to Defendants Strobel and Ridgeway were that Defendant Ebersold was making comments about her daughter regarding her appearance, stroking her hair and touching her in ways which made her daughter uncomfortable. Plaintiff's Exhibit G, Geneva Dial Depo. 16:15-17:9, 17:23-18:23, 29:9-30:20, 31:9-32:10. The fact that Plaintiff's Mother complained three times to Defendant Strobel and two times to Defendant Ridgeway that Defendant Ebersold was making comments to her daughter and touching her daughter in ways that made her daughter uncomfortable and disgusted should have been sufficient to provide actual notice to the school district that Defendant Ebersold was violating school policy. Thus, Plaintiff has satisfied the element of actual notice to a school official with authority to address the complaint and take corrective action.

3.      **The District displayed deliberate indifference to Plaintiff's allegations**

As previously stated herein, the final element that Plaintiff must satisfy in her Title IX sexual harassment case is that the school district was deliberately indifferent to her complaints.

14

*Gebser,* *524 U.S. at 290-91.* "Not every feeble response to a student's complaint of sexually inappropriate conduct by a teacher or school employee will insulate a school district from liability under Title IX." *Gordon,* *115 F.Supp.2d at 1082.* The adequacy of the school's response must be examined in "in light of the 'seriousness and credibility of the complaint that put school officials on notice.'" *Gordon,* *115 F .Supp.2d at 1082-83, quoting* *Doe v. School Admin. Dist. No. 19,* *66 F.Supp.2d 57, 64 (D.Me. 1999).*

  Plaintiff is not questioning the sufficiency of the written policies set forth in Defendant School District's handbook. Rather, Plaintiff contends that the Defendants failed to adhere to that policy and stop the sexual harassment of Plaintiff by Defendant Ebersold, despite repeated complaints by Plaintiff's Mother. According to the testimony of Plaintiff's Mother, she directly told Defendant Ebersold to stop touching her daughter and to stop making comments which were inappropriate on at least one occasion in October, 2004. Plaintiff's Exhibit G, Geneva Dial Depo.11:6-14:20. She later complained several times to Defendant Strobel about Defendant Ebersold's behavior towards her daughter, once in October, 2004, again in late December, 2004 or early January, 2005, again in March, 2005 and finally in April, 2005. Plaintiff's Exhibit G, Geneva Dial Depo. 16:12-18:23 and 29:7-30:20. She then went to Defendant Ridgeway, the school district superintendent, in April, 2005 and again in May, 2005. Plaintiff's Exhibit G, Geneva Dial Depo. 31:9-34:12 and Plaintiff's Exhibit A, Ridgeway Depo. 8:20-10:22.

  According to the Defendant School District's policy on sexual harassment, when a staff member receives a report of sexual harassment, that school employee is required to "promptly inform the administrator who is designated to investigate such reports, or the next level administrator who is not the subject of the complaint." Exhibit B to Allen affidavit (attached to

15

Defendants' Motion for Summary Judgment).  The policy further requires the administrator to make sure that a thorough and prompt investigation of the incident is made and that a written report be completed within a reasonable period of time.  Exhibit B to Allen affidavit.

In this case, Plaintiff's Mother made no less than seven complaints to school teachers or administrators regarding Defendant Ebersold's conduct towards her daughter.  Plaintiff's Exhibit G, Geneva Dial Depo. 16:12-18:23, 29:7-30:20, and 31:9-34:12 and Plaintiff's Exhibit A, Ridgeway Depo. 8:20-10:22.  According to Defendant Strobel, after Plaintiff's Mother complained to him in January, 2005, he spoke to Defendant Ebersold, who denied the allegations.  Plaintiff's Exhibit C, Strobel Depo. 7:10-16.   However, Defendant Strobel did not speak to Defendant Ebersold for several days, perhaps as many as seven days later.  Plaintiff's Exhibit C, Strobel Depo. 7:10-16.  He also testified that, at that time, he reminded Defendant Ebersold that the school had received prior complaints about other teachers from Plaintiff's parents, giving the clear implication that the complaints were not to be taken seriously. Plaintiff's Exhibit C, Strobel Depo. 7:17-23.

Plaintiff further contends that the Defendants failed to conduct a thorough and prompt investigation and no written report was ever made by Defendant Strobel, all as required by the Defendant School District's policy on sexual harassment.  While Defendant Strobel testified that he interviewed Plaintiff's classmates, he admitted that he did not ask them about all of the specific allegations made by Plaintiff.  Plaintiff's Exhibit C, Strobel Depo. 12:9-13:23. Furthermore, while Defendant Strobel testified that he made notes as to what the students told him during the interviews and maintained those notes, no such notes have ever been produced in

16

response to Plaintiff's discovery requests. Plaintiff's Exhibit C, Strobel Depo. 12:19-25. In

discovery, Plaintiff specifically asked Defendants to produce the following:

> 2.     Any and all documents relating to or evidencing any investigation by Defendant in
>        to Plaintiff's complaint of sexual harassment by Defendant Ebersold, including
>        but not limited to:
>        a.     Written statements of witnesses
>        b.     Notes of interviews with witnesses
>        c.     Tape recordings of any and all oral statement and/or interviews of
>               witnesses
>        d.     Transcriptions of any tape recordings of any and all oral statements and/or
>               interviews of witnesses
>        e.     Reports regarding the results of any and all investigations
>        f.     Correspondence received from or sent to Plaintiff
>        g.     Correspondence received from or sent to any of the Defendants
>        h.     Correspondence received from or sent to any person other than
>               Defendant's counsel
>        I.     Documents relating to or evidencing discussions between Plaintiff and
>               Defendant
>        j.     Documents received from or sent to any person other than Defendant's
>               counsel

The only documents received in response to this request were the forms completed by the

students after the filing of this lawsuit. Plaintiff's Exhibit C, Strobel Depo 14:2-13. Defendant

Ridgeway's testimony about an investigation casts further doubt as to the promptness or

thoroughness of the investigation. Defendant Ridgeway testified that Defendant Strobel

conducted the investigation and that he received notes which were the forms completed by the

students. Plaintiff's Exhibit A, Ridgeway Depo 14:4-25. In light of Defendant Strobel's

testimony that he did not have the students complete the forms until after the lawsuit was filed in

this case and Defendant Ridgeway's testimony that the only notes he saw were the students'

forms, there is a serious question that no investigation was conducted until after the filing of this

lawsuit. Neither Defendant Strobel nor Jennifer Keilholz state in their affidavits when the

17

interview of the students occurred. See, Strobel affidavit and Keilholz affidavit attached to Defendants' Motion for Summary Judgment.

Absent any interview of the students at or about the same time as the allegations, the only action taken by Defendant Strobel was to ask Defendant Ebersold if he did and said the things as alleged by Plaintiff. There is no other testimony or evidence from Defendants that any other action was taken by them in response to Plaintiff's Mother's complaints. There is evidence that Defendant Ebersold's denials lack credibility in that Defendant Ridgeway testified that, when he questioned Defendant Ebersold about the allegations, Defendant Ebersold stated that he may have used an example in class with Lindsey involved, but that he did not recall it as having a baby together. Plaintiff's Exhibit A, Ridgeway Depo. 12:5-16. Yet, later on, Defendant Ridgeway stated that he asked his daughter, who was in Plaintiff's class, about whether Defendant Ebersold used an example of he and Plaintiff having a baby together in class. Plaintiff's Exhibit A, Ridgeway Depo. 24:1-19. According to Defendant Ridgeway, his daughter confirmed that Defendant Ebersold used an example that involved he and Plaintiff having a child together and that other students in the class chuckled at the comment. Plaintiff's Exhibit A, Ridgeway Depo. 24:1-19. In his deposition, Defendant Ebersold admitted that he first started to use the example of Plaintiff and a male student having the child together and, when that was met with laughter by the students, he changed the example to include himself rather than the male student. Plaintiff's Exhibit B, Ebersold Depo. 10:13-11:13. Thus, if Defendant Ebersold told Defendants Strobel and Ridgeway that he did not use an example of he and Plaintiff having a child together, he was not telling them the truth, thus pointing out the need for further investigation beyond merely asking Defendant Ebersold if the allegations were true.

18

As previously stated, not every feeble attempt at investigating complaints of sexual harassment serve to insulate the Defendants from liability. *Gordon, 115 F.Supp.2d at 1082.* In the instant case, the Defendants received several complaints alleging the same inappropriate conduct in the same school year by the same teacher against the same student. To do nothing more than ask the teacher if he did it and accept his denials constitutes deliberate indifference. The Defendants did not take Plaintiff's complaints seriously, as evidenced by the fact Defendant Strobel told Defendant Ebersold that Plaintiff's parents had previously complained about teachers and that Defendant Ridgeway did not advise Plaintiff's parents about the fact that the complaint was placed on the school board agenda. Plaintiff's Exhibit C, Strobel Depo. 7:17-23 and Plaintiff's Exhibit G, Geneva Dial Depo. 35:25-36:2.

As Defendants have pointed out, all that needs to be shown is that the Defendants' response was clearly unreasonable in order to establish deliberate indifference on the part of the Defendants. *Davis, 526 U.S. at 648-49.* In this case, it was clearly unreasonable to do nothing more than ask the alleged harasser if he said or did anything inappropriate. Furthermore, according to Defendant Ridgeway, on at least one occasion when they asked Defendant Ebersold about the allegations, his response was to just sit there and say very little, if anything. Plaintiff's Exhibit A, Ridgeway Depo. 13:2-9. In light of the evidence presented, Plaintiff has shown that there is a genuine issue of material fact on the issue of whether Defendants were deliberately indifferent to her complaints.

19

### 4. Defendants attempt to add an element which is not required in teacher-student sexual harassment cases

To support their argument that Plaintiff is required to demonstrate that she was denied equal access to education, Defendants cite the ***Davis*** case. That case is inapposite because the Court was addressing student-student sexual harassment, not teacher-student harassment. In an earlier case involving teacher-student sexual harassment, the Court held that a school district is liable under Title IX for teacher-student sexual harassment when "an employee who has been invested by the school board with supervisory power over the offending employee actually knew of the abuse, had the power to end the abuse, and failed to do so." ***Gebser,*** *524 U.S.. at 280.* The Court distinguished that case from the facts in ***Davis,*** which involved student-student sexual harassment by stating as follows:

> "The fact that it was a teacher who engaged in harassment in *Franklin [v. Gwinnett County Public Schools, 503 U.S. 60 (1992)]* and *Gebser* is relevant. The relationship between the harasser and the victim necessarily affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment."

***Davis,*** *526 U.S. at 653.* Thus, Plaintiff contends that there is not an additional requirement to show that she was denied equal access to educational benefits, inasmuch as it is presumed that if she were sexually harassed by a teacher, the teacher was discriminating against her and the teacher is an agent of the school district.

Regardless, Plaintiff testified that she experienced emotional distress as a result of Defendant Ebersold's comments and conduct. Plaintiff's Exhibit D, L.D. Depo. 57:20-60:2. She testified she experienced problems with sleeping, eating and going out in public in Chamois due

to her fear of being teased by her classmates about Defendant Ebersold's apparent attraction to her. Plaintiff's Exhibit D, L.D. Depo. 57:20-60:2. Thus, Plaintiff experienced injuries to her educational opportunities. "Grades are not the sole benefit to be derived by a student from an educational experience." *Montgomery v. Independent School Dist. No. 709, 109 F.Supp.2d 1081, 1094 (D.Minn.2000).*

## II. THE DEFENDANT SCHOOL DISTRICT VIOLATED PLAINTIFF'S RIGHTS UNDER 42 U.S.C.§1983

Defendants contend that, in order to establish a claim under 42 U.S.C. §1983 ("§1983"), Plaintiff must satisfy four elements. In support of this contention, Defendants cite *Shrum ex rel. Kelly v. Kluck, 249 F.3d 773 (8th Cir.2001).* That case, however, set forth only three requisite elements as follows: "(1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Shrum, 249 F.3d at 777.* The evidence presented by Plaintiff is sufficient to survive a motion for summary judgment and Defendants' motion as to Count II of Plaintiff's Complaint should be denied.

### 1. Plaintiff's constitutional rights were violated.

The first prong of Plaintiff's §1983 claim is whether Plaintiff's constitutional rights were violated. Plaintiff contends that she had certain constitutional rights. "It is well-settled that the Due Process Clause of the Fourteenth Amendment protects the liberty interest of a child in public school from sexual abuse." *Shrum, 249 F.3d at 778.* Accordingly, Plaintiff had a constitutional right. The next question is whether the evidence presented by Plaintiff is sufficient to raise a genuine issue of material fact as to whether that right was violated by Defendants.

21

Plaintiff's Complaint alleges that there were two ways in which the Defendants violated her constitutional right to be free from sexual harassment by a teacher while she attended school. First, she alleges that, in failing to adequately investigate and correct Defendant Ebersold's behavior, Defendants Strobel, Ridgeway and the School District violated her rights in that they displayed a deliberate indifference to her complaints. Second, Plaintiff asserts that the training of Defendants Ebersold, Strobel and Ridgeway was inadequate with respect to how to avoid sexual harassment or to properly respond to complaints of sexual harassment, and, as a direct result, Plaintiff's constitutional rights were violated as the school employees were not properly trained in how to prevent Plaintiff from being subjected to sexual harassment.

According to prior case law, a plaintiff can establish a violation of §1983 by showing that there was a custom or pattern of failing to receive, investigate or act upon complaints, deliberate indifference by the school official with sufficient authority after receiving adequate notice of the conduct, and a resulting injury on the part of the plaintiff. *P.H., 265 F.3d at 658-59.* Rather than restating the allegations of Defendant Ebersold's conduct and the number of times Plaintiff's Mother complained about that conduct, Plaintiff would ask that the evidence discussed previously herein be considered once again as if more fully set forth. Had Plaintiff's Mother only complained on one occasion, then perhaps Defendants' arguments would have some merit. The fact remains, however, that Plaintiff's Mother complained on many different occasions, each time involving complaints that Defendant Ebersold was making inappropriate comments to and inappropriately touching her daughter. Yet, despite her repeated complaints, Defendants Strobel and Ridgeway failed to properly investigate those complaints. They failed to adhere to

22

Defendant School District's policy by not conducting a thorough and prompt investigation and no written report was submitted.

Therefore, Plaintiff has submitted sufficient evidence to show that she was sexually harassed by Defendant Ebersold, the Defendants had actual notice of her complaints of sexual harassment, the so-called investigation failed to abide by school policy and, as a direct result, Plaintiff was injured.

### 2. The Alleged Deprivation Occurred Under Color of State Law

Defendants next argue that Plaintiff cannot establish that the alleged violation of her constitutional rights occurred under color of state law. "A school district may be accountable for the unconstitutional acts of its employees if a constitutional deprivation results from either (1) implementation or execution of an unconstitutional policy or custom by school officials or employees, . . . , or (2) in the event of a substantive due process violation, an executive action by a school official." *Shrum, 249 F.3d at 778*. As previously stated herein, Plaintiff's contention is that the Defendants violated her constitutional rights in two separate and distinct ways. Plaintiff has already addressed herein as to how the Defendants failed to properly receive, investigate and act upon her complaints of sexual harassment.

In order to establish the custom of failing to properly receive, investigate and act upon complaints, Plaintiff must establish a pattern of doing so. In this case, Defendants made clear in their depositions that they knew Plaintiff complained about teachers in the past. According to Plaintiff's parents, their prior complaints went unheeded as well. Plaintiff's Exhibit G, Geneva Dial Depo. 41:21-24 and Plaintiff's Exhibit K, Travis Dial Depo. 9:7-11:14. Furthermore, Plaintiff contends that Defendants displayed a pattern of failing to adhere to the school's policy

23

on sexual harassment on more than one occasion with respect to her complaints during the 2004-05 academic year. Each time she, through her mother, complained about Defendant Ebersold, the Defendants should have conducted an investigation and made a written report. That was never done in response to any of her complaints. Accordingly, Defendants created a custom or pattern of failing to adequately receive, investigate and act upon complaints of inappropriate behavior by a teacher towards a student. Given the complete failure of the Defendants to adhere to its own policy, Defendants were deliberately indifferent towards Plaintiff's complaints and, as a direct result, she was injured.

Courts have also recognized that, if the school district fails to adequately train its employees and a student is later injured by the acts of a school employee, the school district may be liable under §1983. ***Bolon v. Rolla Public Schools,*** *917 F.Supp. 1423 (E.D.Mo. 1996).* "In light of the clear constitutional rights of students to be free from sexual abuse, and the potentially disastrous consequences of a violation of those rights, the Court finds that the need to train was patently obvious and should be implied." ***Bolon,*** *917 F.Supp. at 1431.*

While the Defendant School District may have had policies in place which, by its language, provided sufficient protection for the students, if the Defendant School District did not adequately train its employees on how to implement those policies, then the policies become ineffective. ***Id.*** Of course, the Defendant School District must have notice that their failure to properly train its employees is likely to result in a constitutional violation before the school district can be held liable. ***P.H.,*** *265 F.3d at 660.* "Notice may be implied where the failure to train is so likely to result in a constitutional violation that the need for training is patently obvious or where a pattern of misconduct indicates that the school district's responses to a

24

regularly recurring situation are insufficient to protect the students' constitutional rights." ***Id.*** *at 660-61*.

When asked about the training received by them on the issue of sexual harassment, Defendants Ebersold and Strobel admitted there had been very little training by the Defendant School District. Plaintiff's Exhibit C, Strobel Depo. 4:21-5:15 and Plaintiff's Exhibit B, Ebersold Depo. 17:15-18:10. In fact, Defendant Ebersold described the second training to only "vaguely" address the issue of sexual harassment and then for only about 30-40 minutes. Plaintiff's Exhibit B, Ebersold Depo. 17:15-18:10.

Plaintiff contends that two trainings on sexual harassment, one of which only lasted for 30-40 minutes, is inadequate. Furthermore, all of the individual Defendants admitted that the most recent training did not provide any written material for those who attended. Plaintiff's Exhibit A, Ridgeway Depo. 6:22-7:17, Plaintiff's Exhibit B, Ebersold Depo. 18:5-14, and Plaintiff's Exhibit C, Strobel Depo. 5:13-15. To expect school officials to adequately retain information from a 30-40 minute power point presentation and which did not provide written materials is unreasonable. Presumably, the individual Defendants had access to the Defendant School District policies, and yet could not adhere to those. Plaintiff suggests that there is a question of fact as to whether the Defendant School District adequately trained the individual Defendants on how to properly receive, investigate and act upon complaints which involve a student's averments that a teacher is making inappropriate comments to her and inappropriately touching her.

Defendants' contention that the Defendants had a strong policy, that the school officials adhered to that policy and conducted prompt and thorough investigations is weak, at best. Given

that the Court must review the evidence in a light most favorable to Plaintiff, this Court should find that Plaintiff had established that a genuine issue of material fact exists as to whether Defendants violated her well-established constitutional right to be free from sexual harassment, whether they properly received, investigated and acted upon Plaintiff's complaint and/or adequately trained the school employees and whether the failures of the Defendants proximately caused Plaintiff's injuries. Had either Defendant Strobel or Defendant Ridgeway taken more action and within a quicker time frame, perhaps Plaintiff's injuries could have been lessened; most certainly, had they taken greater steps to ensure that Defendant Ebersold could not sexually harass Plaintiff, then her injuries would not have continued because he would not have been there to make inappropriate comments or to touch her inappropriately. By failing to recognize the seriousness of Plaintiff's complaints, Defendants Strobel and Ridgeway left Plaintiff vulnerable. She is a child and complained that Defendant Ebersold's comments and conduct creeped her out and made her think he liked her. She was stating, in a child's vernacular, that Defendant Ebersold's actions gave her the impression that he was sexually attracted to her. For Defendants to casually dismiss these complaints is inexcusable and displays a deliberate indifference to Plaintiff's plight. As such, Defendants' motion for summary judgment as to Count II of Plaintiff's Complaint should be denied.

### III. PLAINTIFF HAS SHOWN SUFFICIENT EVIDENCE TO DEFEAT DEFENDANT EBERSOLD'S MOTION FOR SUMMARY JUDGMENT ON HER CLAIMS OF INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

In Counts III and IV of Plaintiff's Complaint, she alleges that Defendant Ebersold either intentionally or negligently inflicted her with emotional distress. Defendant Ebersold asserts in

Case 2:05-cv-04282-WAK    Document 48    Filed 10/31/06    Page 30 of 42

the motion that Plaintiff cannot satisfy at least one of the elements of her claims on both counts and, therefore, Defendant Ebersold is entitled to judgment as a matter of law on both Counts III and IV. He is incorrect.

### 1. Plaintiff can Establish a Claim for Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress, the plaintiff must submit sufficient evidence on the following elements: 1) the defendant's conduct was extreme and outrageous, 2) the defendant acted intentionally or recklessly and 3)defendant's conduct resulted in severe emotional distress to the plaintiff. ***Wooten v. Pleasant Hope R-VI School Dist.,*** *139 F.Supp.2d 835, 843 (W.D.Mo.2000).* The evidence on the first prong is a question of fact. Defendant contends his conduct was not extreme or outrageous. Plaintiff contends that it was. Defendant Ebersold, through his counsel, has attempted throughout the memorandum in support of the motion for summary judgment to minimalize his conduct towards Plaintiff. Yet, Plaintiff testified that he stroked her hair on several occasions for 5-10 seconds. Defendant Ebersold tries to portray this as mere positive reinforcement for a student. See, Ebersold affidavit. Yet, that does not explain why he continued to do so even after Plaintiff's Mother told him to never touch her daughter again and after Defendant Strobel allegedly advised him to keep his behavior towards Plaintiff professional. Plaintiff's Mother testified that she complained to Defendant Strobel in October, 2004, January, 2005, and March, 2005 prior to her complaint to him in April, 2005 that Defendant Ebersold touched her daughter again. Plaintiff's Exhibit G, Geneva Dial Depo. 16:15-18:23 and 29:7-25.

27

Furthermore, there was evidence that Defendant Ebersold acted in a manner that was intentional and completely indifferent to whether or not he caused harm to a minor child. Plaintiff's Mother testified that, when she first went to Defendant Ebersold to tell him not to touch her daughter, Defendant Ebersold acknowledged that Plaintiff was uncomfortable with some of his behavior towards her. Plaintiff's Exhibit G, Geneva Dial Depo. 12:21-13:6. When Plaintiff's Mother then told Defendant Ebersold that she would take the complaint to another authority, Defendant Ebersold stated that he did not care because, "she's a student, I'm a teacher and its her word against mine." Plaintiff's Exhibit G, Geneva Dial Depo. 13:3-10. Plaintiff also testified that Defendant Ebersold advised her that her mother had complained to him but that he did not care what her mother thought about him. Plaintiff's Exhibit D, L.D. Depo. 56:10-19. By telling Plaintiff that he did not care what her parents thought, Defendant Ebersold gave a clear impression to Plaintiff that, regardless of her parents' complaints, he would do what he wanted to do. To a child, this conveys the unequivocal message that, despite her parents' attempts to protect her, she would continue to be harassed by her teacher. Such conduct by Defendant Ebersold demonstrates that his conduct was extreme and outrageous and either intentional or at least reckless with regards to Plaintiff's emotional well-being.

As previously discussed, Plaintiff's allegations are that Defendant Ebersold 1) rubbed her back for 5-10 seconds, 2)stroked her hair on several occasions for 5-10 seconds, 3)told her she was pretty and that she had beautiful blonde hair (even when not discussing physical traits in science class), 4)touched her arm for 5-10 seconds on several occasions, 5)used an example in class of he and she having a baby together, subjecting her to ridicule by her classmates, 6)grabbing an object out of her front jeans pocket rather than asking her to hand it to him, and

7)retaining her school picture in his desk drawer though he did not retain any other student's picture. Plaintiff's Exhibit D, L.D. 6:14-10; 8:20-24; 10:1-9; 18:23-25; 24:16-25:3; 27:10-20; 30:7-18; 38:22-41:21; 42:3-19;62:1-10; 64:18-65:15 and Plaintiff's Exhibit B, Ebersold Depo. 10:13-11:13.

Defendant argues that these allegations do not show that Defendant Ebersold acted with an intent to cause Plaintiff emotional distress. However, Defendant fails to address the testimony that he continued to touch Plaintiff even after he was told to stop by Plaintiff's Mother and Defendant Strobel and that he told Plaintiff's Mother he did not care what she did since he was confident he would be believed rather than Plaintiff because he was the teacher and she was the student. Plaintiff's Exhibit G, Geneva Dial Depo.13:3-10. As for the argument that Plaintiff testified that Defendant Ebersold's act in grabbing the lip gloss out of her front pants pocket was for the sole purpose of confiscating an object he believed violated school policy, Defendant completely misses the point. While Plaintiff does not dispute Defendant Ebersold's right to confiscate property he believes violates school policy, the problem is that he grabbed the object out of Plaintiff's front jeans pocket while she was sitting down, rather than ask her to hand him the object. By reaching down and grabbing the object, he provided himself an opportunity to touch Plaintiff in a very sensitive area. Also, it would certainly cause Plaintiff far more emotional distress for him to grab the object as opposed to his request to hand the object to him.

Defendant Ebersold also tries to mischaracterize his stroking of Plaintiff's hair by stating in his affidavit that he would use positive reinforcement with many students. The problem is that Plaintiff testified that he stroked her hair for 5-10 seconds on more than one occasion and even after he was told to stop touching her. Plaintiff's Exhibit D, L.D. Depo. 24:16-26:8 and

Plaintiff's Exhibit G, Geneva Dial Depo. 11:6-13:10 and 14:18-15:2. To suggest, as Defendant does through counsel, that if these incidents constitute extreme and outrageous conduct, then all physical contact between students and teachers would be considered intentional infliction of emotional distress, is offensive. To trivialize Defendant Ebersold's sexual harassment of Plaintiff in that manner is further evidence of Defendant's inability to recognize that it is not appropriate for a teacher to conduct himself in this manner towards a female student. If she, through her parent, makes it clear that you are not to touch her, then you have a duty to honor that request. Teachers should have greater concern for the emotional well-being of the students entrusted to their care than to blatantly disregard such complaints. Similarly, Defendant Ebersold's testimony showed how insensitive he was towards Plaintiff's well-being when he testified about the example of he and she having a baby together. He testified that he first started to use the example of Plaintiff having a child with a male student in the class, but that caused a "humorous uproar" in the class, so he changed the example to include himself rather than the male student. Plaintiff's Exhibit B, Ebersold Depo. 10:13-11:13. Clearly, when the class started laughing about the first example, Defendant Ebersold should have realized that the class was laughing at the example of Plaintiff and a male student having a child together because that implies sexual contact between the two individuals. Changing the example to include himself rather than the male student was, quite frankly, cruel to Plaintiff. He should have known that, by doing so, he was then implying sexual contact between himself and Plaintiff to the entire class. Defense counsel's arguments are a mere continuation of the insensitivity towards Plaintiff, who is a child, not an adult. Whether or not Defendant Ebersold's conduct was outrageous should be a question of fact, left to the jury to decide, given the evidence submitted by Plaintiff.

**2.      Plaintiff Can Establish a Claim for Negligent Infliction of Emotional Distress**

In order to establish a claim for negligent infliction of emotional distress, a plaintiff must show the following: 1)duty of care exists, 2)defendant knew of that his conduct included an unreasonable risk of causing the plaintiff to suffer emotional distress and 3) the emotional distress must be sufficiently severe as to be medically diagnosable.  ***K.G. v. R.T.R., 918 S.W.2d 795, 800 (Mo. banc 1996).***  As Defendants have pointed out, correctly, in their memorandum in support of their motion for summary judgment, the law imposes upon teachers a duty of reasonable care.  ***Spearman v. University City Public School Dist.,*** *617 S.W.2d 68 (Mo. 1981).* Thus, the first prong of the test is met.

The second prong is that Defendant Ebersold knew his conduct included an unreasonable risk of causing emotional distress to Plaintiff.  There is evidence before this Court that Defendant Ebersold told Plaintiff's Mother, when she complained, that he did not care what actions she took to try and stop his behavior because Plaintiff was a student and he was a teacher, therefore he would be believed and she would not.  Plaintiff's Exhibit G, Geneva Dial Depo. 13:3-10.  In addition, Plaintiff testified that Defendant Ebersold told her that her mother had complained to him about his behavior towards Plaintiff and that he did not care.  Plaintiff's Exhibit D, L.D. Depo. 56:13-19.  Defendant continued to stroke Plaintiff's hair after Plaintiff's Mother told him never to touch her daughter again.  Plaintiff's Exhibit G, Geneva Dial Depo. 12:19-23 and 29:9-16.  All of this raises a genuine issue of material fact as to whether Defendant Ebersold knew his conduct involved an unreasonable risk of causing Plaintiff emotional distress, especially since he was told, and acknowledged, that his comments and conduct made Plaintiff uncomfortable. Plaintiff's Exhibit G, Geneva Dial Depo. 12:19-13:2.

Finally, there is evidence that Defendant Ebersold's conduct caused Plaintiff severe and medically diagnosable emotional distress. After the Defendants failed to protect Plaintiff, her parents took her to see a psychologist, Dr. Laurel Kramer. Dr. Kramer was able to diagnose a medical condition based upon and as a direct result of, Defendant Ebersold's conduct towards Plaintiff. Plaintiff's Exhibit L, Plaintiff's medical records. Based on this evidence, Defendants' Motion for Summary Judgment as to Count IV should be denied and a jury should determine whether Defendant Ebersold caused harm to Plaintiff.

IV.    **PLAINTIFF CAN ESTABLISH HER CLAIM OF NEGLIGENT SUPERVISION AGAINST BOTH DEFENDANTS STROBEL AND RIDGEWAY, WHO ARE NOT IMMUNE FROM LIABILITY**

In order to establish a *prima facie* case of negligent supervision, Plaintiff must prove the following: "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property." ***O.L. v. R.L.,*** *62 S.W.3d 469, 474 (Mo.App.W.D. 2001).*

Defendants argue that Plaintiff cannot establish each of the elements of her claim of negligent supervision as against Defendants Strobel and Ridgeway. In addition, they contend that Defendants Strobel and Ridgeway are immune from liability under the doctrine of official immunity. Neither argument is correct and Defendants' Motion for Summary Judgment as to Count V of Plaintiff's Complaint should be denied.

32

1.      **Plaintiff's Claim for Negligent Supervision is Not Barred by the Doctrine of Official Immunity**

The Missouri Supreme Court has definitively held that there is no law or authority which insulates teachers, principals and superintendents of schools from liability under the official immunity doctrine. See, *Lehmen v. Wansing, 624 S.W. 2d 1 (Mo.1981)* and *Spearman v. Univ. City Public School Dist., 617 S.W.2d 68 (Mo.1981).* In fact, the case cited by Defendants specifically recognized that the doctrine of official immunity does not extend to teachers, principals and superintendents. *Jackson v. Roberts, 774 S.W.2d 860, 861 (Mo.App. 1989).* Defendants attempt to mislead this Court by citing a case and claiming it holds that individuals holding the positions of school principal and school district superintendent, such as Defendants Strobel and Ridgeway, are immune under the doctrine of official immunity. That case cited by Defendants is *Kanagawa v. State by and Through Freeman, 685 S.W.2d 831, 835 (Mo.banc 1985).* A reading of that case reveals that the Court did not so hold in that decision. Thus, the case law is clear that Defendants Strobel and Ridgeway are not insulated from liability for their negligent acts under the doctrine of official immunity.

In the event this Court somehow believes that the doctrine of official immunity applies to Defendants Strobel and Ridgeway, Plaintiff contends the act of responding in a certain manner in the face of Plaintiff's complaints of sexual harassment by Defendant Ebersold, were ministerial in nature. Case law holds that public officers are not immune under the doctrine of official immunity for torts committed when acting in a ministerial capacity. *Kanagawa, 685 S.W.2d at 835.* "A ministerial function, . . ., is one 'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal

33

authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" *Kanagawa, 685 S.W.2d at 836, quoting* **Rustici v. Weidemeyer,** *673 S.W.2d 762, 769 (Mo. banc 1984).*

In this case, upon receiving the numerous complaints from Plaintiff's Mother, Defendants Strobel and Ridgeway should have responded in only one manner, as set forth in the Defendant School District policy on sexual harassment. A prompt and thorough investigation was required to be completed, along with the submission of a written report. Exhibit B to Allen Affidavit attached to Defendants' Motion. Defendants Strobel and Ridgeway failed to take such action. There was no thorough investigation of Plaintiff's allegations and no written report was ever submitted. Accordingly, even if the doctrine of official immunity applies to Defendants Strobel and Ridgeway, which Plaintiff contends it does not, they still are not immune because they were acting in a ministerial capacity.

### 2. Plaintiff Establish a Prima Facie Case of Negligent Supervision

Defendants concede in their Memorandum of Law that the first prong of the *prima facie* case for negligent supervision has been satisfied in that Defendants Strobel and Ridgeway owed a duty of care to Plaintiff.

Plaintiff has submitted sufficient evidence to show that Defendants Strobel and Ridgeway breached that duty by showing that, even after numerous complaints that Defendant Ebersold was making inappropriate comments to Plaintiff and touching her inappropriately, Defendants Strobel and Ridgeway failed to adhere to the sexual harassment policy adopted by the school board. Defendants argue throughout their Memorandum that the actions of Defendant Ebersold did not rise to the level of actionable sexual harassment. The primary problem for Defendants Strobel

34

and Ridgeway is that their duty to act under the policy did not require the complaints to necessarily rise to that level before they were to take certain actions. The Defendant School District's policy defines sexual harassment to include "physical contact such as patting or pinching." Exhibit B to Allen Affidavit.

Plaintiff's Mother complained to Defendants Strobel and Ridgeway that Defendant Ebersold was touching her daughter in such a manner that it made her uncomfortable and disgusted her. Plaintiff's Exhibit G, Geneva Dial Depo. 17:2-18:14. She also told them that her daughter was being teased by her classmates as a direct result of Defendant Ebersold's comments and conduct. Plaintiff's Exhibit G, Geneva Dial Depo. 18:12-14. Rather than following policy, Defendants Strobel and Ridgeway did little more than to ask Defendant Ebersold if the allegations were true. Plaintiff's Exhibit C, Strobel Depo. 7:10-8:8 and Plaintiff's Exhibit A, Ridgeway Depo., 11:2-13:9. While Defendant Strobel contends he interviewed Plaintiff's classmates, no written notes of any such interviews were produced during discovery, though Defendant Strobel testified he took notes and gave them to Defendant Ridgeway. Plaintiff's Exhibit C, Strobel Depo. 12:9-25. As previously stated herein, the only written documents produced by Defendants in response to direct discovery requests from Plaintiff were the forms completed by the students after this lawsuit was filed. Plaintiff's Exhibit I; Plaintiff's Exhibit C, Strobel Depo. 14:2-13. The fact that Plaintiff's Mother made several identical complaints of inappropriate comments and touching by Defendant Ebersold and in light of the language of the Defendant School District on sexual harassment, it was foreseeable that Plaintiff was at risk of harm from Defendant Ebersold's conduct and Defendants Strobel and Ridgeway should have acted in accordance with the policy which was designed to protect Plaintiff. Thus, Plaintiff

35

contends that Defendants Strobel and Ridgeway breached their duty of care to her by not following school policy. "Where reasonable minds could infer negligence, determinations of breach of duty are questions of fact for the finder of fact, not questions of law for this court." ***G.E.T. by T.T. v. Barron,*** *4. S.W.2d 622, 625 (Mo.App.E.D. 1999).*

Having proved that Defendants Strobel and Ridgeway owed Plaintiff a duty of care and breached that duty, the next question is whether there is a causal nexus between that breach and Plaintiff's injuries. ***G.E.T.,*** *4 S.W.3d at 624.* Plaintiff contends that this question, in light of the evidence submitted by Plaintiff, is a question of fact, not law, and therefore summary judgment is not proper. There was a policy on sexual harassment that set forth what actions Defendants were to take. A genuine issue of material fact exists as to whether or not Defendants Strobel and Ridgeway acted appropriately or in compliance with that policy. If they did not, then Plaintiff has established a causal nexus between her injuries and Defendants' breach of their duty of care to her.

Finally, Plaintiff was injured in that she testified that she experienced trouble sleeping and eating during that school year and that she was afraid to go outside her house for fear that she would encounter her classmates who would tease her about Defendant Ebersold's apparent sexual attraction to her. Plaintiff's Exhibit D, L.D. Depo. 57:20-60:2. Furthermore, Plaintiff's medical records show that she was diagnosed with adjustment disorder with depression. Plaintiff's Exhibit L, Plaintiff's medical records.

Defendants Strobel and Ridgeway are not entitled to judgment as a matter of law on Count V, negligent supervision, of Plaintiff's Complaint and the motion for summary judgment on Count V should be denied.

## CONCLUSION

Based upon the foregoing and the evidence submitted by Plaintiff, Defendants' Motion for Summary Judgment should be denied in its entirety. Plaintiff has demonstrated that Defendants had actual notice of her complaints of sexual harassment, displayed deliberate indifference to those complaints, resulting in harm to Plaintiff. Similarly, Plaintiff established a *prima facie* case of liability under 42 U.S.C. §1983 against the Defendants. Plaintiff also established that Defendant Ebersold is liable for intentional and/or negligent infliction of emotional distress. Finally, Defendants Strobel and Ridgeway are not insulated from liability for their breaches of their duty of care to Plaintiff on her claim of negligent supervision. Defendants are not entitled to judgment as a matter of law and this case should be submitted to a jury for its verdict on all counts of Plaintiff's Complaint.

Respectfully submitted,

**Carson & Coil, P. C.**

  /s/Carla G. Holste
Carla G. Holste      #35117
515 East High Street
P. O. Box 28
Jefferson City, MO 65102
(573) 636-2177
(573) 636-7119 (Fax)
cgholste@carsoncoil.com

**Attorneys for Plaintiff**

## *Certificate of Service*

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel for Defendants.

  /s/Carla G. Holste

37

EXHIBIT LIST

| | |
|---|---|
| Exhibit A | Joe Ridgeway Deposition |
| Exhibit B | Scott Ebersold Deposition |
| Exhibit C | Brad Strobel Deposition |
| Exhibit D | L. D. Deposition |
| Exhibit D1 | Video of L.D. Deposition |
| Exhibit E | Geneva Dial Affidavit |
| Exhibit F | Photograph of L.D. |
| Exhibit G | Geneva Dial Deposition |
| Exhibit H | Letter Regarding School Board Agenda |
| Exhibit I | Form Used In Investigation |
| Exhibit J | School Sexual Harassment Policy |
| Exhibit K | Travis Dial Deposition |
| Exhibit L | L.D. Medical Records |